IN THE UNITED STATES DISTRICT COURT

                         FOR THE DISTRICT OF OREGON

TERRY PAUL HEDIN,                )
                                 )      Civil No. 07-1800-MO
          Petitioner,            )
                                 )
     v.                          )
                                 )
J.E. THOMAS,                     )
                                 )      OPINION AND ORDER
          Respondent.            )

     Linda S. Sheffield
     400 Embassy Row, Suite 470
     Atlanta, Georgia 30328

     Dennis Balske, Local Counsel
     621 SW. Morrison, Suite 1025
     Portland, OR 97205

          Attorneys for Petitioner

     Karin Immergut
     United States Attorney
     Scott Erik Asphaug
     Assistant United States Attorney
     United States Attorney's Office
     1000 SW Third Avenue, Suite 600
     Portland, Oregon 97204


      1 - OPINION AND ORDER

      Attorneys for Respondent

MOSMAN, District Judge.

    Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2241 challenging the denial of parole by the United States Parole Commission ("Commission") on Fifth Amendment grounds.  For the reasons which follow, the Petition for Writ of Habeas Corpus is Denied.

## BACKGROUND

    Since November 7, 1990, petitioner has been in federal custody serving a 70-year sentence stemming from his convictions in this District as well as the Western District of Texas for Bank Robbery, Armed Bank Robbery, and Armed Robbery of a Federally Insured Savings and Loan.  Prior to entering federal custody, petitioner was incarcerated in the State of Oregon from June 8, 1982 until his parole in November 7, 1990 following his state convictions for Robbery in the First Degree and Ex-convict in Possession of a Firearm.

    Petitioner's initial federal parole hearing occurred on May 20, 1991 when the Commission ordered a 15-year reconsideration hearing to be conducted in May 2006.  Respondent's Exhibit B.  On June 17, 2004, the Commission issued a Notice of Action ("NOA") in which it advanced petitioner's 15-year reconsideration hearing to May 2005 based on his superior program achievement.  Respondent's Exhibit D, p. 2.

    2 - OPINION AND ORDER

On May 10, 2005, the Commission conducted the 15-year reconsideration hearing using a 3-member panel. Two Hearings Examiners recommended setting a presumptive parole date of May 6, 2006. Respondent's Exhibit E. The remaining Hearing Examiner disagreed, and recommended a presumptive parole date of November 8, 2008. This 2-1 panel recommendation in favor of the May 6, 2006 parole date was referred to a Commissioner who agreed with the dissenter's recommendation of November 8, 2008. Although 28 C.F.R. § 2.24(a) required a second Commissioner to confirm this decision because the Commissioner declined to adopt the panel recommendation, the case was not referred to a second Commissioner for final approval.

In a NOA dated June 29, 2005, the Commission set petitioner's presumptive parole date at November 8, 2008 (following the service of 216 months). Respondent's Exhibit G. Petitioner appealed this decision and, on September 27, 2005, the National Appeals Board ("NAB") withdrew the NOA and remanded the case for another 15-year reconsideration hearing as follows:

> The National Appeals Board is remanding your case because the decision failed to comply with 28 C.F.R. Section 2.24(a) requiring the concurring votes of two Commissioners. The Commission will conduct a new 15-year reconsideration hearing in your case.
>
> You contend that the Commission's decision erroneously states that you committed 3 murders for which you received a state commitment. This contention will be addressed at your rescheduled hearing.

3 - OPINION AND ORDER

> Finally, you contend that your institutional misconduct involving possession of anything not authorized was erroneously rated by the Commission as possession of a weapon. This claim will be addressed during your reschedule hearing.

Respondent's Exhibit I.

The new 15-year reconsideration hearing was held on December 7, 2005 where the panel concurred with the previous Commissioner recommendation to establish a presumptive parole date of November 8, 2008. Respondent's Exhibit J. However, at least one Commissioner disagreed and on December 20, 2005, the Commission issued a NOA reflecting that Commissioner's view that petitioner continue to a 15-year reconsideration hearing to be held in December 2020. Respondent's Exhibit K.

Petitioner appealed this decision, and on August 28, 2006, the NAB ordered that the December 20, 2005 NOA be withdrawn and that a new 15-year reconsideration hearing be scheduled because the hearing conducted on December 7, 2005 focused only on the errors noted by the NAB and did not constitute a full reassessment of the case as required by 28 C.F.R. § 2.14(c). Respondent's Exhibit L.

The Commission conducted a third 15-year reconsideration hearing on November 29, 2006. Hearing Examiner Howard recommended that the Commission parole petitioner on November 8, 2008. Respondent's Exhibit M. Executive Hearing Examiner Kostbar reviewed petitioner's file next, and he recommended that the Commission designate petitioner to "Continue to Expiration" which

4 - OPINION AND ORDER

he defined as the "2/3rds Mandatory Parole date of 11/6/2020."[1] *Id* at 7. The third examiner, Hearing Examiner Husk, agreed with Examiner Howard, resulting in a 2-1 panel recommendation to establish a presumptive parole date of November 8, 2008. Respondent's Exhibit N. The case was then forwarded to Commissioner Cushwa who agreed with Kostbar's minority position to require petitioner to serve his sentence to expiration. Because Commissioner Cushwa declined to follow the panel recommendation, he was required to send the file to a second Commissioner for approval. Commissioner Cushwa did not, however, forward the case to a second Commissioner for a confirming vote as required by 28 C.F.R. § 2.24(a).

On December 22, 2006, the Commission issued a NOA requiring petitioner to serve his sentence to expiration. Respondent's Exhibit O. On January 16, 2007, the legal office of the Commission discovered that no Commissioner had cast a confirming vote. Respondent's Exhibit P. Accordingly, the case was referred to Commissioner Mitchell who, on January 17, 2007, ratified the December 22, 2006 NOA. Petitioner appealed this decision, but on June 27, 2007, the NAB denied relief. Respondent's Exhibit Q.

---

[1] Although petitioner is serving a 70-year federal sentence, the two-thirds date of a sentence of 45 years or more is calculated to be 30 years. *See* Respondent's Exhibit O, p. 1.

5 - OPINION AND ORDER

Petitioner filed this habeas corpus action on December 4, 2007 raising various grounds for relief which the court organizes as follows:

1. The Commission failed to follow its own rules and regulations in violation of due process of law when it passed petitioner's case file to a senior Commission member who would not support the vote to parole him. The Commission's ultimate decision is result oriented, and the actual facts were manipulated to achieve a desired result;

2. The Commission's December 22, 2006 Order triggers the presumption of vindictiveness;

3. A more adverse decision resulted from petitioner's election to appeal, in violation of the rules and procedures of the Commission, 28 C.F.R. § 2.26-07. The Commission in 2005 engaged in a result oriented decision by illegally ordering a decision to deny parole without the vote of two commissioners, and with one vote taking place after the NOA denying parole was issued. The Commission did not have the authority to order a new 15-year reconsideration hearing as a result of procedural violations in 2005.

4. The Commission unconstitutionally increased petitioner's offense severity and the parole guidelines when it: (a) mischaracterized his offense behavior; and (b) double counted the offense behavior to place him outside the applicable guidelines; and

5. The Commission failed to consider the mitigating factors applicable to his case.

### STANDARD OF REVIEW

The court has limited jurisdiction to review the Commission's decisions. *Benny v. U.S. Parole Comm'n*, 295 F.3d 977, 981 (9th Cir. 2002). The court should "determine whether the Commission exceeded its statutory authority or acted so arbitrarily as to

6 - OPINION AND ORDER

violate due process. *Id* (citing *Wallace v. Christensen*, 802 F.2d 1539, 1551-52 (9th Cir. 1986)). "Judgments 'involving a broad range of factors' that the Commission takes into account in arriving at its decision are committed to the Commission's discretion and are unreviewable even for abuse of discretion." *Id* at 982 (quoting *Wallace*, 802 F.2d at 1551).

## DISCUSSION

### A. Ground One: Procedural Deficiencies.

Petitioner asserts that the parole regulations applicable to his case place parole decisions in the hands of hearing examiners, not the high-level executive staff. It is clear from the governing regulations that the Hearing Examiners make non-binding recommendations to the Commissioners, and that "[a] recommendation of a hearing examiner panel shall become an effective Commission decision only upon the Regional Commissioner's approval. . . ." 28 C.F.R. 2.23(d). Accordingly, to the extent that petitioner contends that the parole decisions rest with the hearings examiners, the court disagrees.

Petitioner also argues that the applicable parole regulations indicate that before the Executive Hearing Examiner casts a vote, non-executive Hearing Examiners must first attempt to reach a concurrence which will constitute a recommendation to the Commissioner. He maintains that the Commission violated its regulations by allowing an Executive Hearing Examiner (Kostbar) to

7 - OPINION AND ORDER

cast a vote as to petitioner's parole eligibility without first allowing two regular hearings officers an opportunity to reach a consensus. According to petitioner, the governing regulations precluded Kostbar from intervening until the panel of regular examiners is unable to reach agreement by virtue of divergent votes.

Twenty-eight C.F.R. § 2.23(a) specifically provides that an Executive Hearing Examiner functions as a regular Hearing Examiner for the purpose of obtaining a panel recommendation unless the Regional Commissioner orders that a parole hearing be conducted by a panel of two Hearing Examiners only. As there was no such order from the Regional Commissioner, Kostbar was not restricted to casting his vote only in the event of a deadlock. Accordingly, he properly cast his vote as part of the three-member panel.

Petitioner also directs the court's attention to the fact that the NAB invalidated the June 29, 2005 NOA because it only had the assent of one Commissioner. He asserts that the December 22, 2006 NOA which suffered from the same defect but which required him to serve his sentence without parole was not dealt with in the same fashion. Instead, in the case of the December 22, 2006 NOA, the Commission passed his file to a second Commissioner who ratified the decision of the first Commissioner without sending the case back to another panel of Hearing Examiners as it had done following

the June 29, 2005 NOA. Petitioner argues that this disparate treatment of the same issue implicates the Fifth Amendment.

While the two situations were resolved differently, it was within the Commission's discretion to correct the 2006 error by referring the case to a second Commissioner for review. This curative action brought the December 22, 2006 NOA in line with the governing regulations and made the NOA legally operative. Importantly, when the Commission cured the deficiency in the December 22, 2006 NOA, it did so *prior* to receiving any appeal from petitioner.[2] In contrast, the Commission only recognized the procedural error in the June 29, 2005 NOA *after* petitioner had filed an appeal raising claims that the NAB determined should be addressed by Hearing Examiners. It was therefore appropriate to send the case back to the panel in 2005, but unnecessary to do so following the December 22, 2006 NOA. Accordingly, petitioner's Ground One claims do not entitle him to relief.

**B.   Ground Two and Three: Presumption of Vindictiveness**.

In Grounds Two and Three, petitioner alleges that the 2006 NOA triggers a presumption of vindictiveness because he received a harsher result after successfully appealing the Commission's initial decision in 2005. Due process of law requires that

---

[2] Commissioner Mitchell ratified the December 22, 2006 NOA on January 17, 2007. Respondent's Exhibit N. Petitioner did not file his appeal from the NOA until April 11, 2007. Petitioner's Appendix, p. 238.

vindictiveness against a defendant for having successfully attacked a conviction on appeal must play no part in the sentence he receives after a new trial. *Alabama v. Smith*, 490 U.S. 794, 798 (1989). To prevent actual vindictiveness from entering into sentencing decisions, the Supreme Court has adopted a presumption of vindictiveness, applicable whenever a judge imposes a more severe sentence on retrial, which may be rebutted by objective information in the record justifying the increased sentence. *Id*; *Texas v. McCullough*, 475 U.S. 134, 142 (1986); *Wasman v. United States*, 468 U.S. 559, 564-65 (1984).

It is evident from the procedural history outlined above that the Commission issued only one final, binding decision in this case: the December 22, 2006 NOA. The first NOA issued June 29, 2005 was not valid because the first Commissioner who adopted the minority position of the 2-1 panel recommendation failed to forward the case to a second Commissioner as required by 28 C.F.R. § 2.24(a). The second NOA issued on August 28, 2006 was not valid because the underlying hearing did not involve a full reassessment of the case as required by 28 C.F.R. § 2.14(c). The only NOA which was approved by the NAB (and, thus, by the agency itself) was the December 22, 2006 NOA. Because there was only one valid decision issued by the Commission, the presumption of vindictiveness cannot attach.

10 - OPINION AND ORDER

Petitioner cites *Bono v. Benov*, 197 F.3d 409 (9th Cir. 1999) for the proposition that the presumption of vindictiveness may attach to a decision by the Commission, but the presumption attached in *Bono* only after the district court reversed a *final* decision by the Commission. Petitioner is unable to direct the court to any case in which the presumption of vindictiveness attaches when the NAB reverses a decision of a Commissioner in an intra-agency decision which results in a more onerous parole determination. In the absence of such authority, the court is unwilling to conclude that the Commission lacks the discretion to correct its own errors in the course of reaching a final determination without running afoul of the presumption of vindictiveness.

Petitioner next directs the court's attention to the Commission's internal Rules and Procedures Manual which provides that the Commission should not issue a more adverse decision following a prisoner's appeal of a parole decision unless new adverse information comes to light while the appeal is pending. 28 C.F.R. § 2.26-07. "The commission is not bound to follow its own internal rules if the rules are merely statements of policy, organization, procedure, or practice which are within the Commission's discretion to set." *Vargas v. U.S. Parole Comm'n*, 865 F.2d 191, 195 (9th Cir. 1988); *see also Coleman v. Perrill*, 845 F.2d 876, 879 (9th Cir. 1988). For this reason, petitioner cannot

11 - OPINION AND ORDER

prevail on a due process claim based on the failure of the Commission to follow its own internal rules.

Petitioner also criticizes the NAB for invalidating the Commissioner's June 29, 2005 decision for lack of a concurring Commissioner's vote when he never raised such an issue in his appeal. He cannot, however, fault the Commission for recognizing its own mistake and remedying the error during its own review process in order to comply with the governing regulations.

Petitioner next argues that vindictiveness was evident on the Commission's part because it rescheduled his 2005 hearing without advance notice, preventing his wife from attending the hearing and arguing mitigation on his behalf. He also directs the court's attention to the Commission's initial, erroneous determination that he committed the crime of "Unauthorized Possession of a Weapon" while incarcerated when the disciplinary report actually indicated that the infraction constituted the lesser offense of "Possession of Anything Not Authorized."

As discussed previously, the Commission issued only one valid decision in its NOA issued on December 22, 2006. The December 22, 2006 NOA arose out of petitioner's November 29, 2006 hearing at which his wife was present, and the December 22, 2006 NOA informed petitioner that his institutional conduct was deemed an infraction, not new criminal conduct, thereby recognizing that petitioner had been convicted of the lesser infraction. For these reasons, the

12 - OPINION AND ORDER

court concludes that petitioner has not demonstrated that the Commission acted vindictively in violation of his right to due process.

**C.    Ground Four: Offense Severity.**

Petitioner contends that the Commission mischaracterized his offense behavior by expanding on a police report related to a bank robbery during which he fired a shot from his handgun. The Commission rated petitioner's offense behavior as Category Eight because the presentence report indicated that he "fired one round at the teller," leading the Commission to conclude that petitioner attempted to murder the bank teller on duty. Respondent's Exhibit Q.

According to petitioner, he did not intend to kill anyone and only shot at a window three panes removed from any person when he thought people were shooting at him. He claims that the Commission ultimately based its decision on a "slanted version" of a police report, arbitrarily interpreted by the Commission to support a more onerous offense behavior.

> Pursuant to 28 C.F.R. 2.19(c):
>
> The Commission may take into account any substantial information available to it in establishing the prisoner's offense severity rating, salient factor score, and any aggravating or mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond. If the prisoner disputes the accuracy of the information presented, the Commission shall resolve such dispute by the preponderance of the evidence standard; that is, the Commission shall rely upon such information only to the extent that it

13 - OPINION AND ORDER

>represents the explanation of the facts that best accords with the reason and probability. . . .

The NAB addressed petitioner's claim on appeal, finding as follows:

>There is no merit to your claim that the Commission incorrectly rated your offense severity as Category Eight for attempted murder. Information available to the Commission in the presentence report, on which the Commission is entitled to rely, indicates that you "fired one round at the teller." Therefore, the Commission had a rational basis for its decision.

Respondent's Exhibit Q.

Presentence reports may serve as a basis upon which the Commission may render a decision concerning an inmate's offense severity score. *Walker v. U.S.*, 816 F.2d 1313, 1317 (9th Cir. 1987). "Where the Commission properly has evidence before it . . . the evaluation of that evidence is almost entirely at its discretion." *Roberts v. Corrothers*, 812 F.2d 1173, 1180-81 (9th Cir. 1987). The Commission properly considered the information in the presentence report, and was within its discretion to credit the version of events in the presentence report over petitioner's version.

Petitioner also claims that the Commission violated his right to due process of law when it double counted his offense behavior in order to place him above the applicable guidelines. He claims that the attempted murder of the bank teller was used to place him in Category Eight for his offense behavior, then used it again to elevate him within that offense category.

14 - OPINION AND ORDER

Petitioner correctly asserts that the Commission elevated his Category Eight guidelines by more than 48 months. When it did so, the Commission identified the following pertinent case factors guiding its decision:

> After review of all relevant factors and information presented, a decision exceeding the lower limit of the applicable guideline category by more than 48 months is warranted based on the following aggravating factors: You attempted to murder a victim bank teller on June 7, 1982 after having been convicted in 1974 of the murder of two individuals.  You had been released from he 1974 murder conviction in January, 1982.  Within months of release, and while on state parole, you began a series of robberies.  During one of the robberies, June 7, 1982, you committed the attempted murder.  This serious and violent conduct, committed very soon after release on parole for other serious and violent conducts warrants full service.

Respondent's Exhibit O.

There is an unreviewable area of decision-making by the Commission which consists of "those judgments integral to individual parole decisions, judgments as to: the institutional behavior of each prospective parolee, the nature and circumstances of the offense and the history and characteristics of the prisoner, the concepts of general and special deterrence, retribution and punishment, [and] the relevance of material before the Commission." *Roberts*, 812 F.2d at 1176 (citations omitted).  Here, petitioner seeks to challenge the Commission's judgments about his past criminal behavior and the weight it elected to give to past incidents of his criminal history, but such decisions fall exclusively within the province of the Commission and are not

subject to judicial review.  Consequently, petitioner is unable to prevail on his due process claim.

**D.    Ground Five: Consideration of Mitigating Factors.**

Finally, petitioner alleges that the Commission failed to give meaningful consideration to his mitigation evidence.  The NAB responded to this claim as follows:

> There is no merit to your claim that the Commission "overlooked" favorable information in your case. Information received by the Commission and placed in the prisoner's file is presumed to have been considered. Clearly the favorable information you proffered was considered based upon the discussion in the hearing examiner's summary.  The Commission is not required to explain why it did not find that the mitigating information was more persuasive than your offense conduct and criminal record.

Respondent's Exhibit Q, p. 1.

The summary of the Hearing Examiner the NAB referred to includes in-depth coverage of the mitigation evidence presented on petitioner's behalf.  It references: (1) the steps petitioner and his wife had taken to find employment for petitioner upon his release; (2) the fact that a family counselor had been retained to assist with petitioner's re-entry into society; (3) the "very strong relationship" between petitioner and his 17-year-old son, and the close relationship of the family in general; (4) a psychological evaluation concluding that petitioner presented a low to moderate degree of risk; (5) evidence that petitioner had a strong support system and a feasible release plan; (6) evidence that petitioner had been diagnosed with Graves Disease which was

16 - OPINION AND ORDER

corrected after he was incarcerated through thyroid surgery, reducing his impulsivity and irritability; (7) petitioner's contention that he never intended to kill the bank teller during the robbery where he fired his pistol; (8) statements from a correctional counselor who represented that, since 2002, petitioner had not been a management problem and had exhibited a very strong work ethic; (9) petitioner's programming achievements which include his GED, outstanding work evaluations, and completed educational/vocational programs; (10) the overall length of his continuous incarceration for both his state and federal crimes; and (11) favorable financial status. Respondent's Exhibit M.

Petitioner nevertheless asks the court to presume that these factors were not considered. The court cannot assume that the Commission simply ignored the evidence which petitioner presented during his hearing and which is referenced in the Hearing Examiners' summary. *See Nunez-Guardado v. Hadden*, 722 F.2d 618, 621 (9th Cir. 1983). Petitioner seems to infer from the adverse decision of the Commission that it did not consider his mitigation evidence, but an adverse parole decision does not prove this point. *See Walker*, 816 F.2d at 1317 (courts cannot infer from adverse parole decisions that Commission did not consider institutional behavior). Although petitioner would have the court credit the mitigating factors more heavily, the weight accorded to a mitigating factor is within the Commission's discretion and is

unreviewable. *Walker*, 816 F.2d at 1317; *Campbell v. U.S. Parole Commission*, 704 F.2d 106, 113 (3rd Cir. 1983).

Although petitioner also faults the Commission for not following its own Rules and Procedures Manual with respect to his mitigation evidence. Even assuming the Commission failed to do so, as discussed with respect to Grounds Two and Three, the Commission is not required to abide by its own policies and procedures. *Vargas*, 865 F.2d at 195.

For all of the aforementioned reasons, the Commission did not exceed its statutory authority, nor did it abuse its discretion when it made its determination in petitioner's case. Habeas Corpus relief is therefore denied.

## **CONCLUSION**

For the reasons identified above, the Petition for Writ of Habeas Corpus (#1) is DENIED.

IT IS SO ORDERED.

DATED this   6th   day of June, 2008.

                             /s/Michael W. Mosman
                             Michael W. Mosman
                             United States District Judge

18 - OPINION AND ORDER